**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| **JODI JOHANNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO. 3:05-cv-20** |
| **v.** | ) | |
| | ) | **Judge Thomas M. Rose** |
| **MONDAY COMMUNITY** | ) | |
| **CORRECTIONAL INSTITUTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 32-1) AND TERMINATING CASE

_____

This matter is before the Court for decision on Defendant's Motion for Summary Judgment. (Doc. 32-1).  The instant case stems from a complaint filed by Jodi Johannes alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Chapter 4112 of the Ohio Revised Code, §§ 4112.02(A) & 4112.99. (Doc. 14-2).  Johannes alleges to have been discriminated against because of her sex when she was not promoted or otherwise re-classified to the position of Shift Coordinator at MonDay Community Correctional Institution following the reorganization of its operations department. (Doc. 14-2).  In addition, Johannes claims that she was unlawfully discharged in retaliation for filing a discrimination claim. (Doc. 14-2).  MonDay counters stating that Johannes was terminated for wrongfully detaining visitors at the facility without prior authorization from her supervisor or manager and for subjecting residents' families to unwarranted physical, verbal, or mental abuse. (Doc. 14-2, 19).  MonDay's motion for summary judgment asserts that Johannes

-1-

cannot show that she applied for the position in question or that other similarly situated employees were treated differently.  MonDay also asserts that Johannes cannot establish that MonDay's stated reasons for not re-classifying her and terminating her were pretextual.  Because Johannes has not established a *prima facie* case for failure to promote and because she has produced no evidence that MonDay's stated reason for not re-classifying her was pretextual or that MonDay's stated reason for terminating her was pretextual, the Court will grant MonDay's motion for summary judgment.

**I.    Jurisdiction**

This case is before the United States District Court for the Southern District of Ohio on Defendant's Motion for Summary Judgment.  This case deals with alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and of Chapter 4112 of the Ohio Revised Code, §§ 4112.02(A) & 4112.99.  Pursuant to 28 U.S.C. § 1331, the District Courts of the United States have original jurisdiction to hear matters that arise under the laws of the United States. 28 U.S.C. § 1331.  In addition, pursuant to 28 U.S.C. § 1367, in any civil action of which the District Courts have original jurisdiction, the District Courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.  This case is properly before this Court under 28 U.S.C. § 1331 because this case deals with federal law, specifically Title VII of the Civil Rights Act of 1964.  Finally, this Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because the state claims arise under the same case and controversy as the federal claims.

**II.    Background**

MonDay is a minimum security correctional facility located in Dayton, Ohio.  Prior to

her termination, Jodi Johannes was employed by MonDay as a 3rd Shift Team Leader and was

responsible for administrative duties, supervision of residents, facility security, operational

duties, and transportation. (Doc. 31-2).  In the summer of 2003, MonDay reorganized its

operations department in order to increase communications and efficiency within the

department. (Knowles Depo. at 8; Bell Depo. at 21).  Prior to the reorganization, the department

had an Operations Manager (Bell), who supervised an Operations Coordinator (Watson), who

supervised the three Shift Team Leaders. (Bell Depo. Exhibit S).  After the reorganization, the

"Operations Coordinator" position was eliminated and the 1st and 2nd "Shift Team Leader"

positions were re-classified to "Shift Coordinators" which increased the position from a Grade

15 to a Grade 20 pay rate. (Id.).  The 3rd "Shift Team Leader" position was not re-classified

because management felt that the 3rd shift position was less demanding in that it was mostly

administrative and because the residents primarily sleep during that shift. (Blake Depo. at 15).

On the other hand, the 1st and 2nd "Shift Coordinator" positions were responsible for

administrative duties similar to those of the 3rd Shift Team Leader as well as for incident

investigations and rule violation processing which were not part of the 3rd shift job description.

(Doc. 31-2, p. 30).  As a result of the reorganization, there was a need to fill the new positions of

1st and 2nd Shift Coordinators.

Prior to and immediately after the reorganization at MonDay, all of the positions at the

facility listed an educational requirement in the job description. (Doc. 31-2, p. 4, 20, 23, 31).  For

example, the Shift Coordinator required a bachelor's degree, the Shift Team Leader required an

associate's degree, and the Resident Leader required a high school diploma. (Id.). While the

2003 Shift Coordinator job description required a bachelor's degree, the previous Operations

Coordinator, Mike Watson, was offered the position of 1st Shift Coordinator even though he

lacked this requirement. (Bell Depo. at 30, 32-33; Doc. 31-2). This decision was made,

according to the Operations Manager, Bell, mainly because Watson had previously held a higher

position with similar duties to the new Shift Coordinator position, and as a result of the

reorganization Watson was demoted to a lower position on the table of organization. (Johannes

Depo. at 74; Bell Depo. at 32-33). This left open the 2nd Shift Coordinator position. This

position was posted in-house and interviews were held for five candidates. (Bell Depo. at 34).

Reily, the 1st Shift Team Leader prior to reorganization, did not wish to apply for the open 2nd

Shift Coordinator position and was subsequently downgraded to 1st Shift Resident Leader. (Bell

Depo. at 27-28). Plaintiff, Johannes, also chose not to apply for the 2nd shift position because she

did not have the required bachelor's degree. (Johannes Depo. at 75, 85). Carlos Morrison, who

was a part-time Resident Team Leader prior to reorganization, was interviewed and selected for

the 2nd Shift Coordinator position. (Bell Depo. at 35). Morrison met the bachelor's degree

requirement. (Id.).

After Morrison was selected, Plaintiff approached her supervisor, Bell, to inquire why the

3rd shift position was not re-classified during reorganization. (Bell Depo. at 36). Bell responded

stating that the other shifts performed duties above those required of 3rd shift. (Id.). Subsequent

to this discussion, Johannes filed an OCRC/EEOC charge of sex discrimination on January 7,

2004, believing that she was not re-classified because of her sex. (Bell Depo. Ex. E). On July

22, 2004, a finding of no probable cause was issued by the OCRC (Ohio Civil Rights

-4-

Commission), and a right to sue letter adopting this finding was issued on September 20, 2004 by the EEOC (Equal Employment Opportunity Commission). (Summary Judgment Ex. 1; Complaint Ex. B). This suit was then filed by Plaintiff, Jodi Johannes, on December 20, 2004.

At some point between August 2003 and March 2004 MonDay altered their job descriptions to make education one of several ways to meet the qualifications of a position; education was no longer a strict requirement. (Doc. 31-2, p. 2, 18, 27). In March of 2004, Morrison resigned from the 2nd Shift Coordinator position and the job was again posted in-house, this time without the strict B.A. requirement. (Johannes Depo. at 76; Bell Depo. at 48). Johannes again did not apply stating personal reasons. (Johannes Depo. at 76, 85). Brenda Kross, who has a bachelor's degree, was eventually selected for the position. (Bell Depo. at 121-22).

One year later, on March 18, 2005, Mr. Robe, an employee at MonDay, witnessed an encounter between Johannes and Bell at the MonDay facility. (Bell Ex. K). Mr. Robe stated that he witnessed the two talking in the Main Control room and that Bell told Johannes in a mocking and disrespectful tone that it was inappropriate for her to argue with him in front of Mr. Robe. (Id.).

Two days later, on March 20, 2005, Johannes was overseeing the visitation period at MonDay. On that date MonDay received a call stating that an ill juvenile runaway may be at the facility with some of the visitors, specifically with an individual identified as Ms. Williams. (Hodapp Depo. at 11; Johannes Depo. at 12). After receiving the call, Johannes had one of her supervisees call the Dayton Police Department to request an officer to be sent to MonDay to speak with Ms. Williams and her friend Mr. Patterson. (Hodapp Depo. 15-16). During this time, 3:30 p.m., while waiting for the police to arrive, visitation had ended and Johannes, who lacks

arresting authority, refused to allow any of the visitors to exit the facility for approximately 20 minutes and detained Williams and Patterson separately in a locked area for approximately 45 minutes. (Bell Depo. at 76, 86, 93).  At no time did Johannes contact her superiors to obtain permission for the detention of the visitors. (Johannes Depo. at 63).

Subsequent to this incident, MonDay notified Johannes of a predisciplinary hearing charging her with the mistreatment of the visitors. (Bell Ex. H).  At this time, Johannes was placed on paid leave pending the investigation into the incident. (Bell Depo. at 123).  On April 15, 2005, Johannes was terminated from MonDay for the unauthorized and impermissible detention of the visitors which was considered a serious infraction by MonDay. (Bell Ex. I).

Following her termination, Johannes filed a retaliation charge with the OCRC and the EEOC. (Complaint Ex. C).  Plaintiff subsequently withdrew the charge.  A right to sue letter was then issued to Johannes by the EEOC on November 23, 2005. (Complaint Ex. D).  Plaintiff then filed an Amended Complaint on January 23, 2006, adding the retaliation charge to her prior charges of sex discrimination.  Defendant subsequently filed a motion for summary judgment on April 14, 2006.

## III.    Standard of Review

The standard of review for motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more

credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726.  Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

In addition to moving for summary judgment on Johannes' federal claim, MonDay is seeking summary judgment on Johannes' claim brought under Ohio law.  In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998).  Specifically, this Court must apply the substantive law of Ohio '"in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998).  Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994).

## IV.    Analysis

Johannes' complaint alleges that MonDay engaged in sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Chapter 4112 of the Ohio Revised Code, §§ 4112.02(A) & 4112.99, in that she was not promoted or re-

classified. MonDay's motion for summary judgment asserts that Johannes cannot show that she applied for the position in question or that other similarly situated employees were treated differently. MonDay also asserts that Johannes cannot establish that MonDay's stated reasons for not re-classifying her or for terminating her were pretextual. Because Johannes cannot make a *prima facie* case for failure to promote or re-classify and because she has no evidence that MonDay's stated reason for terminating her was pretextual, the Court will grant MonDay's motion for summary judgment.

A plaintiff may survive a defendant's motion for summary judgment on a claim of sex discrimination either by presenting direct or circumstantial evidence of discrimination. Direct evidence is where an employer's statement directly shows discriminatory motive. *See Schlett v. Avco Fin. Servs., Inc.*, 950 F.Supp. 823, 828 (N.D. Ohio 1996). In *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), the Sixth Circuit stated that evidence that would require the jury to infer a fact is not direct evidence. Direct evidence, in the form of verbal comments, will be similar to an employer telling its employee, "I fired you because you are [female]." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). In analyzing discriminatory comments, factors to consider include whether a decision maker or an agent made the comment, whether the comment was related to the decision-making process, and whether comment and the discriminatory act were close in time. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).

### A.    Failure to Promote Under Title VII

In the instant case, Johannes argues that this case may be treated as a failure to hire or as a failure to promote.  For purposes of this analysis, the Court will treat this case as a failure to promote.[1]

In this case, Johannes has no direct evidence of sex discrimination, but relies on circumstantial evidence and the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).  Under the *McDonnell Douglas* approach, in order to prove a *prima facie* case of employment discrimination by circumstantial evidence, a plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she applied and was qualified for the position from which she was rejected; and (4) she was treated differently from a similarly situated person outside of the protected class. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 489 (6th Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973); *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728 (6th Cir. 1999); *Kirkland v. St. Elizabeth Hosp.*, 120 F. Supp. 2d 660, 665-66 (N.D. Ohio 2000); and *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 886 n.16 (S.D. Ohio 1998).

In order to prove the alternative basis of the fourth element, being treated differently than similarly situated employees outside the protected class, a plaintiff must produce evidence that the "relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*,

---

[1] Failure to hire and failure to promote claims are both analyzed under the *McDonnell Douglas* burden shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).  If a plaintiff cannot establish a *prima facie* case for failure to promote, her failure to hire claim will fail for the same reasons.

188 F.3d 652, 659 (6th Cir. 1999) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).  The plaintiff and the employee with whom the plaintiff seeks to compare herself must be similar, that is, "nearly identical," in "all relevant aspects." *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 729 (6th Cir. 2004).  The comparator must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.*

Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the plaintiff's rejection. *McDonnell Douglas*, 411 U.S., at 802, 93 S. Ct. 1817.  Once an employer does this, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's stated reasons are merely pretext for discrimination. *Id.*  The plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2105-2106 (2000).

Johannes' failure to promote claim fails because Johannes has not established her *prima facie* case.  First, Johannes failed to satisfy the third prong of the *McDonnell Douglas* test. Johannes never applied for the Shift Coordinator position.  While there may be a question as to whether Johannes was qualified for the position, her failure to apply is detrimental.  Johannes argues that the bachelor's degree requirement for the position was not a *bona fide* requirement but was there solely to prevent her from applying for the position, and thus concludes that her failure to apply should not be decisive in establishing her *prima facie* case.  This argument is not persuasive.  Johannes has provided no evidence that the degree requirement was in place solely

-11-

to prevent her from applying for the position.[2]  In fact, the evidence establishes the opposite.  In and around 2003 it was MonDay's policy to require educational minimums for positions. (Doc. 31-2, p. 4, 20. 23, 31).  It was not until some time between August 2003 and March 2004 that the educational requirements were reduced to simply one of the methods available to meet the qualifications of a position. (Doc. 31-2, p. 2, 18, 27).  Even after this change however, an applicant's education level was still a factor that was considered during the selection process. There is no evidence that the education criteria was arbitrary or not reasonably related to the position.  Because the education criteria was a *bona fide* requirement and not put in place to keep Johannes from applying for the position, Johannes' failure to apply must still be considered.

In addition to the previous argument, Johannes relies on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 364 (1977), to argue that an employee is not required to undertake a futile act such as applying for a position.  Therefore her failure to apply should not be considered in this case.  This argument is misguided.  In *International Brotherhood*, the Court stated that failure to formally apply for a position was not fatal "when an application would have been a useless act serving only to confirm a discrimnatee's knowledge that the job he wanted was unavailable to him." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 367 (1977); *see also Acha v. Beame*, 531 F.2d 648, 656 (2nd Cir. 1976).  In this situation, the plaintiff has the burden of proving "that he would have applied for the job had it not been for those [discriminatory] practices." *International Brotherhood*, 431 U.S. at 368.  The

---

[2] *See*, *Tate v. Shelby County Rd. Dep't.*, 2000 U.S. App. LEXIS 11841 (6th Cir. 2000)(Plaintiff failed to show that a college degree was an artificial, arbitrary and unnecessary barrier to employment and was not reasonably related to the position.).

-12-

Court in *International Brotherhood* was concerned with patterns of unlawful discrimination practices by employers.  In the instant case however, there is no evidence presented of previous sex discrimination by MonDay that would lead Johannes to believe that her application for the position would have been fruitless.

Further, even after Johannes learned that the degree requirement was waived for Watson, she still did not apply or even inquire about having the degree requirement waived for her as well.  It was not until after the job was given to Morrison that Johannes expressed any interest in the 2nd shift position.  Johannes cannot now claim that she sought the promotion when she waited until after the position was filled to express an interest. *See Payne v. Bobbie Brooks, Inc.*, 505 F. Supp. 707, 716-17 (N.D. Ohio 1980) (In the absence of a showing of futility or employer awareness that could constitute the functional equivalent of an application, one must apply for the position in question before claiming employment discrimination).

Finally, Johannes fails to establish that she was treated differently than similarly situated members of the non-protected class.  The only two individuals that Plaintiff offers for comparison are Watson and Morrison.  However, neither of these men are similarly situated to Johannes.  Watson was demoted from his original position at MonDay.  Watson was originally the Operations Coordinator which supervised all of the Shift Team Leaders (including Johannes).  The demotion to Shift Coordinator subjected Watson to a lower pay grade and position within the MonDay organizational table so he is not similarly situated to Johannes.

Johannes is also not similarly situated to Morrison.  Morrison was a part-time Resident Leader, which was a position lower than that of Johannes.  While Johannes and Morrison had the same supervisor, Morrison did have his bachelor's degree when he applied for the 2nd Shift

-13-

Coordinator position, therefore the two are not similarly situated.  Since Johannes never applied

for the position, never suffered an adverse employment action, and was not treated differently

than a similarly situated person in the non-protected class, she has not made her *prima facie*

case.  Because Johannes failed to establish her *prima facie* case, summary judgment on the

failure to promote claim is proper.

### B.    Failure to Re-Classify

Plaintiff next argues that she was discriminated against because her 3rd shift position at

MonDay was not re-classified even though Watson and Morrison's positions were.  The analysis

for a failure to re-classify claim is nearly identical to a failure to promote claim except that in

order to prove a *prima facie* case for failure to re-classify, "the employee may prove that: (1)

positions held by comparable employees were reclassified and upgraded; or (2) the difference in

the grades was the result of [sexual] considerations." *Johnson v. Auburn University*, 403 F. Supp.

2d 1101, 1109 (M.D. Ala. 2005); *citing Moore v. Devine*, 767 F.2d 1541, 1546 (11th Cir. 1985).

After a *prima facie* case is established, the burden shifting analysis of *McDonnell Douglas*

applies.

Johannes argues that she should have been re-classified because Watson and Morrison,

both male, were re-classified to a higher grade as a result of the reorganization of MonDay.

Johannes' argument however, mischaracterizes the facts because neither Watson nor Morrison's

positions were re-classified.  Watson's position as Operations Coordinator was eliminated and he

was demoted to the lower grade Shift Coordinator position.  Morrison was promoted from part-

time Resident Team Leader to full-time Shift Coordinator.  In addition, there is no evidence that

the difference in classifications was the result of sexual considerations.  Because neither Watson

-14-

nor Morrison's positions were re-classified to Shift Coordinator and because there is no evidence of sexual considerations, Johannes has not established her *prima facie* case.

Even assuming that Johannes could establish a *prima facie* case, she would still have to provide sufficient evidence that MonDay's offered reason for not re-classifying her was pretextual.  MonDay stated that the reason for reorganization was to more effectively run the MonDay facility.  MonDay also stated that the decision not to change the 3rd shift position was due to the fact that 3rd shift was primarily responsible for administrative duties, not disciplinary duties since the residents were asleep during the majority of that time, therefore 3rd shift did not merit a higher pay grade.  In addition to administrative duties, the 1st and 2nd shift positions were responsible for incident and rule violation processing, which was not done on 3rd shift.  These differences, according to MonDay, justified the increase in pay grade for 1st and 2nd shift.

Johannes offers no evidence of pretext in that the decision to re-classify 1st and 2nd shift and not to re-classify 3rd shift was done because of sex.  Johannes argues that she performs many of the same duties on 3rd shift as the two males on the daytime shifts, therefore the failure to re-classify was based on sex.  However, the job descriptions indicate that the 1st and 2nd Shift Coordinator positions require more from the employee in regards to investigations, disciplinary hearings, exercise of judgment, and the like.

Since Johannes has neither established a *prima facie* case nor provided sufficient evidence of pretext, no genuine issue of material fact exists in regards to this claim and summary judgment is appropriate.

C.     Retaliation

Johannes' final claim is that MonDay engaged in unlawful retaliation in violation of 42 U.S.C. § 2000e-3.  In order to succeed on a retaliation claim, a plaintiff must first establish a *prima facie* case by a preponderance of the evidence that: (1) plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of her civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *see also EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997); *citing Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).  To establish the causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563.  Although courts have found no one factor dispositive in establishing a connection, "evidence that plaintiff was treated differently than similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.*

Once a plaintiff establishes his/her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's discharge. *Nguyen*, 229 F.3d at 563.  If the defendant meets this burden, the burden shifts back to the plaintiff to prove that the offered reason was merely a pretext for discrimination. *Id.*  However, a jury may not reject the employer's explanation "unless there is a sufficient basis *in the evidence* for doing so." *Manzer*, 29 F.3d at 1083.

-16-

In regards to her *prima facie* case, Johannes did in fact engage in protected activity, her exercise of those rights was known by defendant, and at some point after, the defendant took an adverse employment action against plaintiff (she was terminated).  The only remaining issue is whether there was a causal connection.  Plaintiff argues that there is a causal connection because she was suspended and then terminated three months after filing her lawsuit.  Plaintiff also argues that a connection is established because her supervisor, Bell, was "openly contemptuous" of her and because she was not allowed to utilize MonDay's progressive disciplinary policy. MonDay, in its motion for summary judgment, counters this by pointing out that the initial filing of the EEOC/OCRC complaint was fifteen months prior to Johannes' termination thereby negating the temporal proximity argument.  MonDay further states that even assuming that the appropriate date was the filing of the lawsuit, that was still three months prior to her termination which was not close enough to establish retaliation by temporal proximity.  Finally, MonDay asserts that the progressive disciplinary policy at MonDay is not a requirement and MonDay was never bound to follow it.

In this case, even assuming that three months is adequate to make a finding of temporal proximity, Johannes has not established a causal connection.  The Sixth Circuit has held that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other evidence." *Nguyen*, 229 F.3d at 566; *citing Parnell v. West*, 1997 WL 271751, *2 (6th Cir. 1997).  In *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986), the Sixth Circuit rejected the argument that temporal proximity of four months was an adequate basis for a finding of retaliation when the plaintiff provided no additional evidence that the protected activity and the adverse action were causally connected.  In the instant case, Johannes has provided no

-17-

additional evidence of retaliatory conduct sufficient to establish a causal connection between her

protected activity and her discharge from MonDay. The only evidence offered by Johannes is

one instance where her supervisor Bell made a "contemptuous" comment to her by stating that it

was inappropriate for her to argue with him in front of other employees, specifically Mr. Robe.

(Bell Ex. K). However, this one comment does not reasonably support an inference of

retaliation. The Sixth Circuit in *Harrison v. Metropolitan Government of Nashville*, 80 F.3d

1107 (6th Cir. 1996), and in *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir.

1999), found a causal connection when the temporal proximity was considered in addition to

other evidence of retaliatory conduct such as repeated comments by supervisor that he would not

hesitate to run employees out of his department, frequent discipline for trivial matters, and

unwarranted criticism of plaintiff's work. The Sixth Circuit in these cases points to repeated

actions by superiors which taken in conjunction with temporal proximity are sufficient to

establish a causal connection. In the instant case, Bell's one comment that it was inappropriate

for Johannes to argue with him in front of Mr. Robe is insufficient to establish an inference of

retaliation. (Bell Ex. K). Because Johannes has failed to establish a causal connection between

her protected activity and her discharge from MonDay, she has not met her burden of

establishing a *prima facie* case of retaliation.

Even assuming Johannes could establish a *prima facie* case, MonDay asserts as a

legitimate, nondiscriminatory reason for Johannes' discharge the misconduct toward visitors at

MonDay while on duty. On March 20, 2005, Johannes detained all of the visitors at MonDay

without the authorization of her superiors and in violation of policy. The disciplinary policy at

MonDay stated that an employee is subject to "removal" for engaging in any acts of discourteous

treatment of others, neglect of duty, misfeasance, or any other failure of good behavior. According to MonDay, Johannes' actions fell within this category and she was rightfully discharged.

In response to MonDay's reason for termination, Johannes offers that MonDay's reason for termination was merely pretext for retaliation because there are no policies governing retaining visitors, no policies on exiting the facility, and no policies on cooperating with other policing agencies.  In addition, Johannes offers that she was the only operations employee terminated by Bell since he became Operations Manager, that MonDay deviated from its policy on employee discipline, that she was denied a hearing, and that she was acting appropriately during the incident that gave rise to her termination.  Overall, Johannes argues that taking all of these factors together is enough to establish pretext.

While all of these claims may be true, none of them show that MonDay's offered reason for termination was merely a pretext for unlawful retaliation.  The above response neither shows that MonDay's proffered reasons had no basis in fact, nor that the proffered reasons did not actually motivate the discharge, nor that they were insufficient to motivate discharge. *See Manzer*, 29 F.3d at 1085.

The incident did occur, therefore MonDay's reason has a basis in fact.  In addition, Plaintiff offers no evidence of others who were similarly situated to herself that were not terminated, therefore there is no evidence that her actions were insufficient to motivate discharge.  Johannes only points to employees that were terminated for committing more serious offenses, which bears no relation to establishing pretext.  Finally, Plaintiff has not provided additional evidence to establish that the proffered reason did not actually motivate the discharge.

-19-

Johannes may not simply rely upon her *prima facie* evidence "but must, instead, introduce additional evidence of …discrimination." *See Manzer*, 29 F.3d at 1084.  Johannes offers no additional evidence, but relies on the claim that MonDay did not follow policy upon terminating her, and that in examining the circumstances as a whole, she was acting appropriately.  However, as case law points out, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 246 (6th Cir. 2005), *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995).  Furthermore, MonDay's disciplinary policy covers the actions taken by Johannes (discourteous treatment of others, neglect of duty, misfeasance) and approves of removal for such actions.  Ultimately, even if all of Plaintiff's allegations are true, they do not permit a finding that MonDay's reason was merely a pretext for discriminatory action.  At most, viewing the evidence in the light most favorable to Plaintiff, Johannes can only show that she was not provided the benefit of the MonDay's progressive disciplinary policy.  However, she has provided no information that the denial of this benefit was because she filed a lawsuit.  As MonDay and Johannes herself point out, the policy is "generally" progressive, it is not a requirement. (Doc. 32-1 and 34, p. 18).  Therefore, summary judgment is appropriate for this claim.

## V.     State Law Claim

In the instant case, Plaintiff's federal and state claims are identical.  Federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is generally applicable to cases involving similar violations of Ohio Revised Code, Chapter 4112.  *Republic Steel v. Ohio Civil Rights Comm.*, 44 Ohio St.2d 178 (1975); *Weiner v. Cuyahoga Community*

*College District*, 19 Ohio St.2d 35, 249 N.E.2d 907 (1969). "Because the elements and legal standards for establishing unlawful sex discrimination are the same under Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e-2, we need not analyze [the] sex discrimination claims separately under state and federal law." *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (2000). Thus, summary judgment in favor of Defendant is proper for Plaintiff's state law claim as well.

**VI.    Conclusion**

Plaintiff's failure to promote claim fails both because she did not apply and because she was not treated differently than similarly situated men. Because Johannes has not established a *prima facie* case for her failure to promote claim, the Court need not consider any legitimate reasons for such action or whether the action was pretextual. In addition, Plaintiff's failure to re-classify claim fails because there is no evidence of motivation based on sex nor evidence to disprove the asserted motivation to better organize MonDay. Johannes has produced no evidence that the decision not to re-classify her position was a pretext for sexual discrimination. Finally, Plaintiff's retaliation claim fails because a three month window between filing of suit and termination standing along is insufficient to establish retaliation, therefore Johannes has produced no evidence that her termination was pretextual. The lack of evidence allows for entry of summary judgment for MonDay Community Correctional Institution on the Title VII claims. The lack of evidence of discrimination also allows entry of summary judgment on the state law claim.

Wherefore, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 32-1). The Clerk is **ORDERED** to enter judgment for Defendant on all claims. The

-21-

captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, Wednesday, June 21, 2006.[3]

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[3]   The Court acknowledges the valuable contribution and assistance of judicial intern Jamie D. Uppenkamp in drafting this opinion.